UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-771(DSD/SRN)

M.P., by and through his parents and natural guardians K. and D.P.,

plaintiff,

v.

**ORDER**

Independent School District No. 721, New Prague and Arlene Pexa,

Defendants.

Margaret O'Sullivan Kane, Esq., Center for Education Law, 607 Grand Avenue, Suite 200, St. Paul, MN 55102, counsel for plaintiff.

Marie C. Skinner, Esq., Charles E. Long, Esq., and Rider, Bennett, Egan & Arundel, 200 Metro Center, 333 South Seventh Street, Minneapolis, MN 55402, counsel for defendant Independent School District No. 721.

James R. Andreen, Esq. and Erstad & Reimer, 200 Riverview Office Tower, 8009 34th Avenue South, Minneapolis, MN 55425, counsel for defendant Pexa.

This matter is before the court upon defendants' motion for summary judgment [Docket No. 12]. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendants' motion.

FILED 5-15-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 5-15-02
Deputy Clerk's Initials ____

## BACKGROUND

M.P. is a sixteen-year-old student who suffers from schizophrenia. He lives with K.P. and D.P., his adopted parents, in New Prague, Minnesota within the boundaries of the Independent School District 721 ("School District"). He attended school in the School District until the beginning of the 2000-2001 school year. M.P. then attended school in the Northfield school district through open enrollment. (K.P. Dep. at p. 19.) His parents claim that they enrolled M.P. in the Northfield school district because his former school district failed to enforce M.P.'s rights and because M.P. faced increased physical and verbal assaults and disability-related discrimination after the School District's health paraprofessional allegedly disclosed M.P.'s schizophrenia by asking K.P., in front of other students, whether the medicine K.P. gave the paraprofessional for M.P. was "for treatment of the schizophrenia."

On behalf of M.P., plaintiffs K.P and D.P. filed a Request for an Administrative Hearing on November 28, 2000, before the Minnesota Department of Children, Families and Learning for violations of M.P.'s rights as a disabled student. A Verified Amended Complaint and Request for Hearing was later filed on December 18, 2000. (Kane Aff., Ex. 2.) The School District moved the administrative hearing officer for summary disposition of the cause of action, and that request was granted by the hearing

officer on January 12, 2001. (Kane Aff., Ex. 3.) On February 7, 2001, plaintiffs filed an appeal to an administrative hearing review officer and the underlying decision was affirmed. (Kane Aff., Ex. 4.)

Plaintiffs then filed this action against the School District and the high school health paraprofessional, Arlene Pexa, ("Pexa") alleging that defendants discriminated against M.P. on the basis of a mental handicap in the education environment in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 794 (Section 504), as amended, the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.03, the Minnesota Government Data Practices Act, Minn. Stat. § 13.01, *et seq.*, and the Family Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, *et seq.* Defendant now moves for summary judgment and the court grants the motion.

**DISCUSSION**

**I. Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. IDEA Claim

IDEA was enacted to ensure that children with disabilities receive a free, appropriate public education. 20 U.S.C. § 1400(c). Under IDEA, a parent or guardian is entitled to procedural safeguards to ensure that his or her disabled child's educational needs are being met by the student's school district. For example,

20 U.S.C. § 1415(b)(6) permits a parent or guardian "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Id. After making a complaint, the child is entitled to an impartial due process hearing. Id. § 1415(b)(2). The Minnesota implementing statute for IDEA provides that a parent may obtain an impartial due process hearing when he or she objects to a proposed assessment, transfer or placement of a child and the addition, provision, denial or removal of educational services. Minn. Stat. § 125A.09 .17, subd. 6(1)-(5). Under Minnesota law, a due process hearing shall be "initiated and conducted by and in the district responsible for assuring that an appropriate program is provided." Id. at subd. 6.

In Thompson v. Board of the Special Sch. Dist. No. 1, 144 F.3d 574, 576 (8th Cir. 1998), Leroy Thompson, a disabled student, attended school within the Minneapolis school district until his parents enrolled him in a charter school. After switching schools, Thompson's mother requested a due process hearing to challenge the district's assessment of her son and the education he was provided before leaving the district. An independent hearing officer found that the district lacked jurisdiction to hear the matter because Thompson no longer attended school in the district school, a decision which a hearing review officer affirmed.

Thompson then filed suit against the Minneapolis school district, alleging a violation of IDEA. In assessing Thompson's IDEA claim on appeal, the Eighth Circuit found that Thompson had not stated a cause of action under IDEA "because his request for a review [came] after he left the District previously responsible for his education." Thompson, 144 F.3d at 578. In so finding, the Eighth Circuit held:

> If a student changes school districts and does not request a due process hearing, his or her right to challenge prior educational services is not preserved. Subsequent challenges to the student's previous education become moot because the new school district is responsible for providing a due process hearing.

Id. at 579; see also Smith v. Special Sch. Dist. No. 1, 184 F.3d 764, 767 (8th Cir. 1999)(affirming the district court's decision to dismiss a student's IDEA claim against his prior school because that student was not a student or a resident in the school district at the time he requested a due process hearing); P.T. and E.T. v. Indep. Sch. Dist. No. 113, 29 IDELR 13 (D. Minn. 1998)(holding that a student's IDEA claim was moot because the student's parents did not initiate a hearing to review the adequacy of the student's education before he left the school district).

The facts in this case are virtually identical to those in Thompson. Like Thompson, M.P. is a disabled student who was dissatisfied with the services the School District provided to him. Similar to Thompson, M.P. withdrew from the school within the

School District and enrolled in a school in another school district. As in Thompson, M.P. initiated a due process hearing to challenge the services that the School District had provided him after leaving the School District's schools. Based upon those undisputed facts, and following the clear law established in Thompson, plaintiffs' IDEA claim against defendants is moot because the court lacks jurisdiction over it.[1] The court therefore grants summary judgment for defendants on plaintiffs' IDEA claim.

**III. Discrimination in Violation of Section 504**

Section 504 of the Rehabilitation Act prohibits discrimination on the basis of handicap in programs receiving federal financial assistance. 29 U.S.C.A. § 794(a) (West 2002). In order to establish a prima facie case of disability discrimination under Section 504, a plaintiff must prove:

> (1) that plaintiff is a "disabled individual" under the Act; (2) that plaintiff is "otherwise qualified" for the position or program sought; (3) that plaintiff was excluded from the position sought or denied benefits from a program or activity solely by reason of plaintiffs' disability; and (4) that the program or activity in question received federal financial assistance.

[1] The court is unpersuaded by plaintiffs' argument that they preserved their right to sue by providing notice of their intent to move M.P. to another school district prior to his removal. Such notice does not satisfy the standard articulated in Thompson, which requires plaintiffs' to initiate a due process hearing before leaving the school district.

Prins. V. Indep. Sch. Dist. No. 761, 27 IDELR 312 (D. Minn. 1997)(citing K.M. v. Indep. Sch. Dist. No. 284, 24 IDELR 533, 536 (D. Minn. 1996)); see also Robinson v. Hamline University, 1994 WL 175019 *3 (Minn. Ct. App. May 10, 1994). Because the only element in dispute in this case is whether M.P. was excluded from the position sought or denied benefits from a program or activity solely by reason of M.P.'s disability, the court focuses its analysis on this question.

To establish that a plaintiff has been denied benefits from a program because of a disability, the Eighth Circuit requires the plaintiff to prove "either bad faith or gross misjudgment...." Monahan v. State of Neb., 687 F.2d 1164, 1171 (8th Cir. 1982); Hoeksta v. Indep. Sch. Dist. No. 283, 916 F. Supp. 941, 948 (D. Minn. 1996)("The Eighth Circuit has held that plaintiffs must allege and make a showing of either bad faith or gross misjudgment to prevail on a claim under § 504 of the Rehabilitation Act..., at least in the context of educating students with disabilities.").[2]

Moreover, when a plaintiff seeks compensatory damages, the plaintiff must prove intentional discrimination. Bowers v. Nat'l

---

[2] The Eighth Circuit has emphasized that it does not read Section 504 as creating general tort liability for educational malpractice. Monahan, 687 F.2d 1170. Toward this end, the court stated: "[s]o long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under [Section] 504." Id. at 1171.

Collegiate Athletic Ass'n, 118 F. Supp. 2d 494, 507 (D.N.J. 2000)(holding "that compensatory damages are not available for violations of section 504 absent a showing of intentional discrimination"); Smith v. Me. Sch. Admin. Dist. No. 6, 34 IDELR 201 (D. Me. 2001)("Because the plaintiffs seek compensatory damages under [the Rehabilitation Act], they must prove intentional discrimination."); see also Wood v. President and trustee of Spring Hill College, 978 F.2d 1214, 1219 (11th Cir. 1992)("plaintiffs who proceed under a theory of disparate treatment in section 504 actions must prove intentional discrimination or bad faith in order to recover compensatory damages"). A plaintiff may prove intentional discrimination by showing (1) that defendants acted out of personal animosity, ill will or discriminatory animus or (2) that defendants acted with "deliberate indifference" to the strong likelihood that a violation of a federally protected right would result from their action. Smith v. Me. Sch. Admin. Dist. No. 6, 34 IDELR 201 (D. Me. 2001).

In this case, plaintiffs assert that defendants denied M.P. benefits of services through the following conduct: "failing to provide M.P. with accommodations in the educational environment, failure to timely undertake and investigate allegations of disability discrimination, student-to-student harassment, hostile education environment, disclosing personal, private information, failing to take appropriate and effective remedial measures once

notice of harassment was provided." (Compl. at ¶ 37.) Plaintiffs further allege that defendants acted with malice and deliberate indifference. However, the court finds no evidence that defendants acted with the requisite discriminatory intent. The court therefore grants summary judgment for defendants on this claim.[3]

**A. Deliberate Indifference**

Plaintiffs' cannot support their contention that defendants acted with deliberate indifference.

**1. Accommodations**

The undisputed evidence shows numerous efforts by defendants to accommodate M.P. in school. For instance, in February 1999, while M.P. was in eighth grade, thc School District initiated a team meeting and developed a Section 504 accommodation plan for M.P. (Long Aff., Ex. L.) As modifications, M.P. was allowed to work with other students with normal or low range of abilities, was allowed access to a counselor/social worker when needed or if problems arose, and was allowed to use the restroom and school nurse as needed. (Id.) His teachers also attempted to reduce M.P.'s expectations if high anxiety was apparent. (Id.)

Moreover, on August 30, 1999, a team meeting was held to develop a new Section 504 plan for M.P. for high school. This plan

---

[3] Plaintiffs present absolutely no facts to suggest that defendants acted with personal animosity, ill will or malice. The court therefore focuses its analysis on plaintiffs' argument that defendants acted with deliberate indifference.

included the previous modifications and the plan provided that the school social worker would monitor M.P.'s progress and maintain contact with his parents. (Long Aff., Ex. M.) These and other steps taken by the School District illustrate that it did not act with deliberate indifference to M.P.'s disability in providing him with accommodations.

### 2. Disclosing Private Information

Moreover, plaintiffs cannot sustain a claim under Section 504 with respect to the release of information by defendant Pexa because plaintiffs cannot establish that Pexa released private information to the students or, alternatively, even if she did release the information, plaintiffs cannot establish that she acted with deliberate indifference. As defendants point out, no facts establish that any student actually overheard Pexa's diagnosis. K.P. admits that she has no personal knowledge that a student ever said anything to another student in the school. (K.P. Dep. at p. 12.) Moreover, the conversation that occurred between K.P. and Pexa came in response to K.P.'s request that Pexa administer a new medication to M.P. (Pexa Aff. at ¶ 5.) No evidence suggests that Pexa acted with deliberate indifference in asking the purpose of the medication she was to administer to M.P. And, no facts suggest that Pexa was deliberately indifferent to the fact that other students in the nurse's office would overhear the conversation.

### 3. **Hostile Education Environment, Student-on-Student Harassment and School District's Remedial Efforts**

Plaintiffs urge the court to extend to the law of Davis v. Monroe County Bd. of Educ., 526 U.S. 629 (1999), and apply that Court's analysis of student-on-student harassment under Title IX to this case of student-on-student harassment under Section 504. In Davis, the Court concluded

> that recipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority. Davis, 526 U.S. at 646-47.

The Davis court determined the responsibility of funding recipients when placed on notice of student-on-student harassment was to "merely respond to known peer harassment in a manner that is not clearly unreasonable." Davis, 526 U.S. at 649.

Based on Davis, plaintiffs claim that defendants acted with deliberate indifference to the student-on-student harassment and did not take the appropriate remedial steps. While the court acknowledges that Davis may apply to claims of student-on-student harassment under Section 504, the court does not so hold because, even if the Court's analysis in Davis did apply, plaintiffs' claims nevertheless would fail because plaintiffs presents no evidence that defendants acted with "deliberate indifference."

The School District had limited information about the alleged harassment. M.P. never told a School District administrator or teacher about it. (M.P. Dep. at pp. 32-35, 42, 77.) He stated that he told one lunch aide about one incident of getting pushed into a locker. (Id. at 17-18.) The aide then accompanied him to his locker so he could get his belongings. (Id.) Moreover, M.P. only told his parents about the alleged harassment several months after it began. (K.P. Dep. at p. 14-15.) M.P.'s parents waited three weeks before informing the School District of the harassment. (Nicholson Aff. ¶ 4.) In a letter dated April 27, M.P.'s parents notified Ms. Nicholson, the high school principal, that students were calling M.P. names. (Nicholson Aff.) They did not name any specific students or specific instances. (Id.) And, they never notified the school of any physical harassment or assaults in the letter.

The School District took the appropriate steps to remedy the alleged harassment of which it had been informed. After receiving plaintiffs' letter, Ms. Nicholson telephoned M.P.'s parents on May 1, 2001. (Nicholson Aff. at ¶ 4.) Ms. Nicholson notified the dean of students and the school counselor about the concerns of D.P. and K.P. (Id.) The dean of students notified M.P.'s teachers and asked them to monitor M.P.'s interaction with his peers. (Id. at ¶ 5.) None of the teachers witnessed any harassment. (Id.) Neither M.P. nor his parents reported any subsequent harassment.

(Id.) Thus, the School District appropriately responded to the limited information that plaintiffs provided to it. Because plaintiffs present no evidence of deliberate indifference under Section 504, the court grants defendants' motion for summary judgment on this matter.

**IV. Discrimination in Violation of MHRA**

Plaintiffs allege that defendants violated the Minnesota Human Rights Act, Minn. Stat. § 363.03 through a course of conduct that included "failing to provide M.P. with accommodations in the educational environment, failure to timely undertake and investigate allegations of disability discrimination, student-to-student harassment, hostile education environment, disclosing personal, private information, failing to take appropriate and effective remedial measures once notice of disclosure, harassment, discrimination and hostile education environment was provided." (Complaint at ¶ 48.) "There is no distinction between the analysis of a claim under [Section 504] and under MHRA in the context of educational services for disabled children." Moubry v. Indep. Sch. Dist. 696, 9 F. Supp. 2d 1086, 1110 (D. Minn. 1988)(citing Roberts v. KinderCare Learning Cntrs., Inc., 86 F.3d 844, 846 n.2 (8th Cir. 1996)(finding no distinction between ADA and MHRA in analyzing school's alleged failure to accommodate disabled child); Breiland v. Advance Circuits, Inc., 976 F. Supp. 858, 864 (D. Minn. 1997)("Claims under the Minnesota Human Rights Act are interpreted

consistently with claims under the ADA....”). Therefore, for the same reasons that plaintiffs cannot establish a prima facie case under Section 504, plaintiffs are unable to establish a prima facie case under the MHRA. The court thus grants summary judgment for defendants on plaintiffs’ MHRA claim.

**V. Section 1983**

Plaintiffs also bring a claim under § 1983. To state a claim under § 1983, plaintiffs must show that (1) defendants operated under color of state law, (2) that plaintiffs were denied a right granted under the United States Constitution or a federal statute and (3) a direct causal link between defendants’ actions and the deprivation of the right. 42 U.S.C. § 1983; Hoekstra, 916 F. Supp. at 945-46.

To establish that defendants acted under color of law in this case, plaintiff must show that defendants were following a municipal policy or custom. Monell v. Dep’t of Social Servs., 436 U.S. 658, 690-1 (1978); Hoekstra, 916 F. Supp. at 946. In Jane Doe A, the Eighth Circuit articulated the essential elements of a § 1983 municipal custom claim. A plaintiff must prove:

> 1. The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the government entity’s employees;
> 2. Deliberate indifference to or tactic authorization of such conduct by the governmental entity’s policymaking officials after notice to the officials of that misconduct; and

> 3. That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

Jane Doe A v. Special Sch. Dist. of St. Louis, 901 F.2d 642, 646 (8th Cir. 1990). Put another way, for defendants to be held liable on the basis of custom, plaintiffs must establish a pattern of "persistent and widespread" unconstitutional practices which became so "permanent and well settled" as to have the effect and force of law. Monell 436 U.S. at 691; see also Jane Doe, 901 F.2d at 646. Alleging mere negligence does not establish a constitutional violation under this standard. Rubek v. Barnhart, 814 F.2d 1283, 1284 (8th Cir. 1987).

In Jane Doe, the court held that the defendants did not have notice of a pattern of unconstitutional acts and did not display deliberate indifference to or tacitly authorize the violation of the plaintiffs' constitutional rights where defendants had received isolated complaints about the school bus driver. Jane Doe A, 901 F.2d at 646. In Thelma D., the court concluded that five complaints of misconduct over a sixteen-year period did not compromise a persistent and widespread pattern of unconstitutional misconduct. Thelma D., 934 F.2d at 933. In Larson, the court concluded that the evidence did not suggest a pattern of unconstitutional behavior because plaintiffs could point to only one prior complaint regarding a school district employee's behavior. Larson v. Miller, 76 F.3d 1446, 1453 (8th Cir. 1996).

Here, as in Jane Doe, Thelma D. and Larson, plaintiffs do not present evidence to establish that defendants had notice of a pattern of unconstitutional misconduct or that such a pattern actually existed. In fact, plaintiffs' complaint makes no reference to any widespread, persistent pattern of misconduct and plaintiffs provide no persuasive evidence of any prior misconduct by defendants. While plaintiffs correctly assert that they need not establish a pattern of discrimination where failure to train employees is likely to result in a violation of constitutional rights, plaintiffs present no evidence to support their conclusion that the School District failed to train its employees or that such failure, if it existed, would likely result in a violation of constitutional rights. The court therefore grants defendants' motion for summary judgment on plaintiffs' § 1983 claim because plaintiffs cannot establish the existence of a continuing, wide-spread, persistent pattern of unconstitutional misconduct.[4]

## VI. Minnesota Government Data Practices Act ("MGDPA")

Plaintiffs bring a claim under MGDPA against the School District and Pexa. The court considers the claim against each defendant in turn.

---

[4] Plaintiffs' § 1983 claim also fails because, as already discussed, plaintiffs cannot establish that defendants acted with deliberate indifference. Moreover, to the extent that plaintiffs' § 1983 is based upon the Equal Protection Clause, the claim fails because plaintiffs produced no evidence that M.P. was treated differently than other students because of his disability.

### A. MGDPA Claim Against the School District

MGDPA creates a private cause of action for damages. Achman v. Chisago Lake Indep. Sch. Dis. No. 2144, 45 F. Supp. 2d 664, 669 (Minn. Ct. App. 1999). A person who suffers damage as a result of a MGDPA violation may bring an action against a state agency or responsible authority to cover "any damages sustained, plus costs and reasonable attorney fees." Minn. Stat. § 13.08, subd. 1; Navarre v. South Washington County Schs., 633 N.W.2d 40, 53 (Minn. Ct. App. 2001). To prevail on a claim for damages, plaintiffs must show "that the District or its responsible authority disseminated educational data to an individual not authorized access to that data, and that the dissemination caused him damage as a result." Achman, 45 F. Supp. 2d at 669; Navarre, 633 N.W.2d at 53-54.

Here, plaintiffs' claim against the School District for damages under MGDPA fails because no material facts suggest actual disclosure of protected information or a causal connection between the alleged MGDPA violation and the injury suffered. Plaintiffs put forth no facts demonstrating that the students actually overheard M.P.'s medical diagnosis.[5] Moreover, no material facts suggest that the alleged disclosure caused plaintiffs' damages.

---

[5] Without providing evidence to support its assertion, plaintiffs' memorandum blatantly concludes: "The District's employee breached M.P.'s statutory entitlement to privacy and as a direct result, M.P. was the subject of significant peer harassment that fundamentally altered his right to attend a public school setting and significantly damaged him both physically and emotionally." (Pls.' Mem. Opp'n Defs.' Mot. Summ. J. at 35.)

Although the alleged disclosure occurred on January 10, 2000, (K.P. Dep. at p. 8), M.P. never said anything to his parents about the harassment until April 5, 2000, (K.P. Dep. at p. 15). K.P. states that M.P. never indicated that any of the student's said anything to him about the conversation between K.P. and Pexa. (K.P. Dep. at p. 12.) K.P. also admitted that she has no personal knowledge that any of the students ever said anything to other students at the school. (Id.) The court therefore grants defendants' motion for summary judgment on plaintiffs' MGDPA claim against the School District.

### B. MGDPA Claim Against Pexa

Plaintiffs' MGDPA claim against defendant Pexa also fails. Under MGDPA, civil actions for damages may only be brought against "a political subdivision, responsible authority, statewide system, or state agency...." Minn. Stat. § 13.08, subd. 1 (2001). MGDPA "does not impose civil liability on individuals." Walker v. Scott County, 518 N.W.2d 76, 78 (Minn. Ct. App. 1994). For this reason, the court grants defendants' motion for summary judgment on plaintiffs' MGDPA claim against defendant Pexa.

## VII. Family Educational Rights and Privacy Act ("FERPA")

No private right of action exists under FERPA. Girardier v. Webster College, 563 F.2d 1267, 1276 (8th Cir. 1977)(explaining that no private right of action exists under FERPA); Tarka v. Franklin, 891 F.2d 102, 104 (5th Cir. 1989)("The Fifth Circuit has found that

FERPA does not explicitly provide for a private cause of action and that its legislative history does not indicate that the drafters of the legislation intended for there to be one."); Achman, 45 F. Supp. at 672 (stating that there is no private cause of action under FERPA). FERPA authorizes the Secretary of Education of take appropriate action to enforce" its provisions. 20 U.S.C. 1232g(f); Girardier, 563 F.2d at 1276. The statute does not provide a private remedy and "no private cause of action arises by inference." Girardier, 563 F.2d at 1276; Achman, 45 F. Supp. at 672.

In this case, plaintiffs assert their FERPA claim as a private cause of action. Plaintiffs appear to concede that FERPA does not create a private cause of action because they present no legal argument to support their private cause of action under FERPA in their memorandum opposing defendants' motion for summary judgment. Because FERPA does not authorize such a claim, the court grants defendants' motion for summary judgment on plaintiffs' FERPA claim. Achman, 45 F. Supp. 2d at 672 ("If [plaintiff] has brought a private cause of action under FERPA, *Girardier* would end the Court's inquiry.").

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Docket No. 12] is granted and plaintiffs' claims are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 14, 2002

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

- ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd