**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

M. P., by and through
his parents and natural guardians,
K. P. and D. P.,

Plaintiffs,

-vs-

Independent School District No. 721,
New Prague, New Prague Board
of Education,

Defendants.

Civil File No. 01-711 (JNE/JJG)

**PLAINTIFFS' APPLICATION FOR AN AWARD AND APPROVAL OF FEES AND EXPENSES PURSUANT TO 29 U.S.C. § 794a(b)**

## INTRODUCTION

From November 200 through to the jury trial in September 2006, Defendants' litigation behavior could be described fairly as an institutional arrogance that resulted in obstruction and delays. The delays continue to this day. Throughout the legal process, the Defendants did little to genuinely address the issues presented by the Plaintiffs either through settlement conference or through private mediation. The inevitable result is that Plaintiffs were required to expend in excess of $275,000.00 in fees and out-of-pocket expenses, in addition to the inherent "opportunity costs" involved in representing individuals against an intransigent public school district. All attempts by Plaintiffs' counsel to economize and expedite the progress of this litigation and settlement was thwarted or ignored. Throughout the litigation, Defendants continued to represent the Plaintiffs as opportunistic bad actors and met each opportunity for settlement with the same minimal offer through previous settlement conferences, settlement discussions, and private mediation until the Rule 68 Offer that attempted to leverage the

substantive claims of the Plaintiffs against the extraordinary fees and costs associated with defending against multiple dispositive motions and appeals. Consequently, the fees and costs are significant. This Fee Application is submitted pursuant to the Jury Verdict and the Plaintiffs' prevailing party status.

As an initial matter, it should be noted that in Section 504 cases, the prevailing party **may** recovery "reasonable attorneys' fees and costs . . . 29 U.S.C. § 794a(b). The recovery of attorneys' fees under Section 504 advances two related, but nevertheless distinct public policies: 1) and 2) encourage private attorneys to come forth and challenge governmental abuses. *Kean v. Stone*, 966 F.2d 119, 122 (3rd Cir. 1992). These policies support an award of fees and costs in this case.

Plaintiffs submit this Memorandum of Law in support of their motion for summary disposition of their request for attorneys' fees, costs and disbursements pursuant to the Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(b) ("Section 504"). Plaintiffs base their request upon their prevailing party status under Section 504 for fees, costs and disbursements associated with the successful appeals to the Eighth Circuit Court of Appeals and jury verdict in the United States District Court.

## SUMMARY OF LITIGATION

The matter before the Court took a complicated and circuitous procedural course. The resolution of claims should not be this complicated in order to vindicate the rights of the disabled in public school settings.

In order to access the federal court, Plaintiffs were required to exhaust the administrative remedies and the fees and costs associated with the exhaustion were necessary to obtain any

relief in federal court under the disability discrimination claims. After the remedies were exhausted, the Plaintiffs proceeded with a Complaint in state court that was removed by the Defendants to federal court.

This matter was initiated through a complaint to the Minnesota Department of Education on the 28th day of November 2000 for violations of Matthew's right to a free appropriate public education under the IDEA and Section 504. The Defendant District responded to the initial Complaint on the 5th of December 2000 asserting that "[t]o the extent that Section 504 of the Rehabilitation Act of 1973 is mentioned in the student's statement of objections, the special education hearing officer has no jurisdiction over matters or issues of discrimination."

On the 15th of December 2000, a pre-hearing conference was held between counsel and the Minnesota Department of Education ("MDE") appointed administrative law judge ("ALJ"). The issue of 504 claims, raised in the initial complaint, was discussed and the ALJ concluded without subsequently issuing a written order that no 504 claims would be heard.

The Complaint was amended on the 27th of December 2000 and Matthew continued to request an administrative hearing for all free appropriate public education ("FAPE") –related claims under the IDEA and Section 504. Thereafter, the District moved for dismissal of the administrative hearing arguing: 1) Matthew's claims were moot as a result of enrollment in another district under the *Thompson*[1] and *Smith*[2] analysis; 2) the hearing officer has no jurisdiction over non-FAPE related claims including disability discrimination and data practices violation; and 3) the hearing officer must hear both IDEA and 504 FAPE claims in the IDEA administrative hearing. The Plaintiffs responded by opposing the motion for dismissal on the

1 *Thompson v. Bd. of Special School Dist. No. 1*, 144 F.3d 574 (8th Cir.1998).
2 *Smith by Townsend v. Special School Dist. No. 1*, 184 F.3d 764 (8th Cir. 1999).

following grounds: 1) jurisdiction remains in the district of residence; and 2) ALJ must hear all 504 claims remediable in the administrative hearing. Despite the agreement between the parties that the administrative law judge must hear all FAPE related Section 504 claims, the subsequent ALJ decision on the 12th of January 2001dismissed all claims without prejudice and was silent regarding the distinction between IDEA and Section 504 claims.

Plaintiffs appealed the decision to a Hearing Review Officer ("HRO"). The appeal was based on the claims that 1) jurisdiction remained in the resident district due to an emergency move to ensure Matthew's safety; and 2) the ALJ misapplied the state statutory language. The District opposed the appeal asserting that the motion was properly granted on jurisdictional grounds based on the *Thompson* and *Smith* analysis. The HRO affirmed the ALJ's decision in all respects.

The Plaintiffs then appealed the hearing review decision to the United States District Court and joined additional claims that included: 1) disability discrimination and harassment claims under Section 504 and the Minnesota Human Rights Act; 2) 42 U.S.C. § 1983 claims for violation of Matthew's Equal Protection and Due Process rights under the IDEA and Section 504; 3) privacy and government data violations under the Family Right to Educational Privacy Act ("FERPA"), 20 U.S.C. § 1232g, *et seq.* and the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.01, *et seq*.

After the pretrial schedule was established, modest discovery was conducted by the parties. Thereafter, the District initiated a summary judgment motion which was granted on the 15th of May 2002.[3] No formal settlement conference was undertaken between the parties.

---

[3] Defendant Arlene Pexa was voluntarily dismissed as a party through a stipulation between the parties.

The Plaintiffs' appealed the District Court decision the Eighth Circuit Court of Appeals which found in favour of the Defendants regarding the IDEA and § 1983 claims but reversed the summary disposition of the Section 504 Rehabilitation Act claims and remanded for further proceedings consistent with its opinion.

Upon remand on the 16th of April 2003, the Defendants, over the objections of the Plaintiffs, requested and was granted leave to seek additional discovery and move for dismissal under Fed.R.Civ.P. 12(b)(1) and (b)(6). Nearly one year later, the Defendants filed the Rule 12(b) motion on the 1st of March 2004 asserting that the Plaintiffs are to be denied access to any and all relief for failing to exhaust the IDEA administrative remedies related to the Section 504 claims. The Plaintiffs opposed the dismissal. Before initiating the Rule 12(b) motion, no additional discovery was by the Defendant though the request for additional discovery did result a substantial lapse in time before the Rule 12(b) motions were heard.

In anticipation of trial Magistrate Jonathan Lebedoff scheduled a settlement conference on the 10th of October 2006 at which the Defendants' offered Five Thousand Dollars ($5,000.00) to resolve all of the Plaintiffs claims including attorneys' fees, costs and disbursements. Plaintiffs rejected the offer.

On the 3rd of January 2005, the United States District Court granted the Defendants' motion for dismissal and the parties were once more before the Eighth Circuit Court of Appeals. On the 8th of March 2006, the Eighth Circuit reversed and remanded the matter for trial.

The trial was scheduled for the 5th of September 2006. Unfortunately, Magistrate Jeanne Graham was unable to schedule the parties for a settlement conference until the 6th of September 2006. The Plaintiffs requested that due to the calendar conflict the parties consider a private

mediator and the parties did participate in private mediation on the 4th of August 2006 at which point the Defendants upped their offer to $10,000.00 including attorneys' fees, costs and disbursements. Once again, the Plaintiffs rejected the offer.

On the 18th of August 2006, the Defendants provided a Rule 68 offer in the amount of One Hundred and One Thousand Dollars. *Exhibit No. 5*. This amount was to include payment of all the attorneys' fees, costs and disbursements. The Plaintiffs rejected this offer as well.

The parties attempted settlement one last time with Magistrate Graham on the 6th of September 2006 with the Defendants continuing to offer the amount of $101,000.00 as set forth in the Rule 68 Offer. Once again, Plaintiffs rejected the offer.

The parties proceeded to trial on the 11th of September 2006 and a jury rendered a favourable verdict for the Plaintiffs on the 15th of September 2006 and judgment in the amounts of $47,375.00 and $37,300.00 totaling $84,675.00 was entered on the 21st of September 2006..

After entry of the judgment, the Defendants moved for a Judgment NOV and a Stay in execution of the judgment which is presently pending before the Court. At the present time, Defendants have not appealed the verdict.

On the 8th of November 2006, the Plaintiffs made one last attempt to resolve the fees, costs and disbursements, foregoing a lodestar amount, reducing the fees and costs by 15% and waiving the fees associated with defending the Motion for Judgment NOV. *Ex. No. 6.* The Defendants responded through counsel by categorically declining to participate in any settlement discussions. *Aff of Kane.*

The fees requested in this case exceed the ultimate award. This, however, is not due to a lack of diligence on the part of the Plaintiffs' counsel. Rather, the magnitude of the fees request

and hours expended is a direct result of the Defendants' dispositive motions, appeals and refusal to resolve the substantive claims without tying the claims to a deliberately insufficient offer of attorneys' fees.

## ARGUMENT

The Rehabilitation Act provides, in pertinent part, that otherwise qualified handicapped individuals shall not be discriminatorily excluded from activities receiving federal financial assistance. The Rehabilitation Act establishes that

> (b) In any action or proceeding to enforce or charge a violation of a provision of this title [29 USC §§ 790 et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

29 U.S.C. § 794a(b).

"Prevailing party" in the Rehabilitation Act has been given the identical meaning as that interpreted in the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988 (West 1981). *See Disabled in Action v. Mayor of Baltimore*, 685 F.2d 881, 885 n. 4 (4th Cir. 1982).

In *Farrar*, the Supreme Court set forth the framework for determining whether a civil rights plaintiff is a prevailing party under 42 U.S.C. § 1988 for purposes of awarding attorney's fees. The Court held:

> To qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement. . . . In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

506 U.S. 103 at 111-12, 113 S. Ct. 566, 121 L. Ed. 2d 494 (citations omitted); see also *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791-92109 S. Ct. 1486 (1989)*; Hewitt v. Helms,* 482 U.S. 755, 759-60, 107 S. Ct. 2672 (1987)*; Kentucky v. Graham,* 473 U.S.

159, 165,105 S. Ct. 3099 (1985)*; Hanrahan v. Hampton*, 446 U.S. 754, 758, 64 L. Ed. 2d 670, 100 S. Ct. 1987 (1980) (*per curiam*). We hold that the same framework applies to determinations of prevailing party status under 42 U.S.C. § 12205 and 29 U.S.C. § 794a(b). See *Pedigo v. P.A.M. Transp., Inc.*, 98 F.3d 396, 397 (8th Cir. 1996) ("The term 'prevailing party' appears in a number of other statutes [besides 42 U.S.C. § 12205] that permit the recovery of attorney's fees, see, e.g., 42 U.S.C. § 1988, and cases analyzing those statutes therefore provide us with guidance in the present case."). See *Pottgen v. Missouri State High School Activities Ass'n*, 103 F.3d 720, 723 (8th Cir. 1997) (analyzing whether an ADA plaintiff was a prevailing party under § 12205; holding the *Farrar* analysis applies to determinations of prevailing party status under § 12205 and the Rehabilitation Act, 29 U.S.C. § 794a(b).); *Layton v. Elder*, 143 F.3d 469, 473 (8th Cir. 1998) (citing *Pedigo II* for the proposition that ADA and Rehabilitation Act plaintiffs who succeeded on the merits of their discrimination claim were prevailing parties entitled to an award of attorney's fees); see also *Peter v. Jax,* 187 F.3d 829, 837 (8th Cir. 1999) (citing *Pedigo II* with approval in case under 42 U.S.C. § 1983, in which consent injunction did not make disabled students prevailing parties entitled to attorney's fees), cert. denied sub nom. *Westendorp by Westendorp v. Ventura*, 529 U.S. 1098, 120 S. Ct. 1832 (2000).

There are three specific issues that the Court must resolve through these motions. Whether the Plaintiffs obtained some measure of success on the merits, whether the plaintiffs hour rate and hours dedicated to litigation are reasonable, and whether the Plaintiffs were justified in rejecting the Defendants' undifferentiated Rule 68 Offer of Settlement.

## I. DEFENDANTS SHOULD BE REQUIRED TO PAY ALL ATTORNEYS' FEES, COSTS AND DISBURSEMENTS.

Given the facts and circumstances of this case, there should be no doubt that plaintiffs' are entitled to all reasonable costs and fees.

Plaintiffs are the prevailing party in the above-captioned proceeding and did obtain success on the merits of the claims through the jury verdict awarding the Plaintiffs compensatory damages in the amount of Eighty-Four Thousand, Six Hundred and Seventy-Five Dollars ($84,675.00.).

### A. DEFENDANTS WERE FOUND CULPABLE AND PLAINTIFFS SUCCEEDED ON THE MERITS.

The jury concluded that the Defendants engaged in bad faith or gross misjudgment in dealing with the Plaintiffs. That bad faith or gross misjudgment was played out before the jury as the Defendants took the approach of "blaming the disability" rather than conform their conduct to the District's policies and procedures.

The Plaintiffs brought an important and meritorious claim before the jury which resulted in the modest substantive relief the Plaintiffs were seeking, in addition to the vindication of Matthew's rights as an individual with a disability. In pursing each motion and appeal, the Plaintiffs brought about substantial clarity to the law of exhaustion under the IDEA and Section 504 and the right to pursue disability discrimination claims independent of those exhaustion requirements.

**B. DEFENDANTS ACTIONS THROUGHOUT LITIGATION WERE TO DELAY AND DEPRIVE THE PLAINTIFFS OF THEIR ATTORNEYS' FEES IN EXCHANGE FOR THE RELIEF ON THE SUBSTANTIVE CLAIMS.**

The Defendants in this case had an inexhaustible supply of resources – both financial and legal. When the time came to resolve the substantive claims, the Defendants miscalculated by attempted to leverage the significant attorneys' fees and costs that were incurred as a result of the Defendants' action against the substantive claims of the Plaintiffs.

**C. PLAINTIFFS WERE REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES IN ORDER TO ACCESS THE FEDERAL COURT.**

The Plaintiffs anticipate that the Defendants will argue that Plaintiffs attorneys' fees, cost and disbursements should be reduced by the amount of hours dedicated to bringing an administrative hearing and appeal. However, this argument ignores the exhaustion of administrative remedies mandate set forth under the Individuals with Disabilities Education Act and the Rehabilitation Act. It was not until this case that the 8th Circuit Court of Appeals determined that a disability discrimination claim could proceed forward without meeting the exhaustion requirement under the IDEA and Section 504.

**D. PLAINTIFFS ARE ENTITLED TO THE EXPERT WITNESS FEES.**

The expert testimony of Dr Lea Hogan was a vital part of rebutting the Defendants' assertion that Matthew's experience in the public school setting were the result of his hallucinations and delusions rather his actual experience. Dr Hogan's testimony not only provided specific information about Matthew's schizophrenia but also the manner in which it manifest in Matthew and his response to medication to manage the positive and negative symptoms of the disorder. Without the testimony of Dr Lea Hogan, who was treating Matthew at the time, the Defendants may well have succeeded in persuading the jury to blame the

disability by concluding that Matthew's experiences at the New Prague High School were nothing more than the positive and negative symptoms of his disorder.

Fed. R. Civ. P. 68 provides that "at any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued." As used in Rule 68, the term "costs" refers to all costs awardable under the statute or other authority that is the basis for the underlying claim. *Marek v. Chesny*, 473 U.S. 1, 9, 87 L. Ed. 2d 1, 105 S. Ct. 3012 (1985). Where the underlying statute defines "costs" to include attorney's fees, therefore, such fees are "costs" for purposes of Rule 68.

The Rehabilitation Act incorporates the remedies and procedures of Title VII. 29 U.S.C. § 794a; *Spence v. Straw*, 54 F.3d 196, 200-01 (3d Cir. 1995); *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 304 (5th Cir. 1981). The relevant portion of Title VII provides that: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs, and the . . . United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e-5(k) (emphasis added).

During the course of litigation, Plaintiffs incurred expert witness fees for Dr Lea Hogan in the amount of Three Thousand, Eight Hundred and Sixty-Three Dollars ($3,863.00). *Exhibit No. 4*.

## II. PLAINTIFFS' WERE JUSTIFIED IN REJECTING THE DEFENDANTS' UNDIFFERENTIATED RULE 68 OFFER.

The Federal Rules of Civil Procedure, Rule 68 provides the parties with the opportunity to settle and compromise thus avoiding costly litigation as follows:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

Fed.R.Civ.P., Rule 68.

The issue before the Court is whether the relief obtained by the Plaintiffs' was greater than the Defendants' Rule 68 Offer. In this case, the Defendants' attempted to leverage the accrued attorneys' fees, costs and disbursements against the Plaintiffs' rights to substantive relief under the Act. As the Rule 68 Offers reflect, the Defendants offered an undifferentiated amount of One Hundred and One Thousand Dollars ($101,000.00) on the eve of litigation after initiating three dispositive motions and two appeals to the Eighth Circuit Court of Appeals. The Defendants' offer to settle both the substantive claims and the fees and costs in the above-referenced amount did not offer the Plaintiffs an amount that is more favourable than the offer. In this case, the Plaintiffs received Eighty-Four Thousand, Six Hundred and Seventy-Five Dollars ($84,675.00.) on their substantive claims while preserving their right to pursue attorneys' fees, costs and disbursements in an amount in excess of $275,000.00 at the time of the Rule 68 offer.

As the United States District Court for the Southern District of New York in *Local 32B-32J, SEIU v. Port Auth.*, 180 F.R.D. 251 (S.D. N.Y. 1998), correctly pointed out "in determining whether the judgment obtained by the offeree is more favorable than the offer, one must add pre-settlement fees and costs to the jury verdict to determine the amount ultimately awarded by the court. *Amato v. City of Saratoga Springs*, 991 F.Supp. 62, 68 (N.D.N.Y. 1998)(citing *Grosvenor v. Brienen*, 801 F.2d 944, 948 (7th Cir. 1986)." *Local 32B-32J*, at 253.

At the time the Defendants' made the Rule 68 Offer on the 18th of August 2006 to include compensatory damages, attorneys' fees, costs and disbursements, Plaintiffs' attorneys' fees were in excess of $200,000.00 inclusive of costs and disbursement. As a result of the Offer that included the fees, costs and disbursements accrued by the Plaintiffs at the date the offer was made, the Plaintiffs rejected the offer.

## III. PLAINTIFFS' FEE REQUEST IS REASONABLE.

An evaluation of the reasonableness of a petition for fees requires ascertainment of the lodestar amount. The lodestar is calculated by multiplying the reasonable number of hours worked by the counsel by a reasonable hourly rate. *See Hensley v. Echerhart*, 461 U.S. 424,433 (1983). "Where a party obtains excellent results, his attorney should recover a full compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id*. at 435. In this case, the policy behind awarding fees under Section 504, as well as the Defendants' intransigence, could well enhance the lodestar amount. Defendants made no reasonable concession, retained three attorneys, including one who is a trial specialist, and attempted to leverage the attorneys' fees against the Plaintiffs' substantive claims. Plaintiffs are justified in

requesting the current hourly amount of $250.00 rather than the historic hourly amount of $200.00. Plaintiffs' counsel has been litigating this case for six years. Under circumstances such as this, where there is a substantial delay in payment, the law is clear that it is appropriate to use current rated to compensate for inflation and the loss of the use of funds during litigation. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)(compensation received several years after services are rendered is not equivalent to the same dollar amount received as the services are performed; thus, am award of current rates was appropriate); *Lutheran Medical Center of Omaha v. Contractors, Laborers, et al.*, 814 F.Supp. 799, 804 (D. Neb. 1993). Thus, Plaintiffs are requesting the current hourly rate of $250.00 per hour for those hours set forth on Invoice No. 1026.

Plaintiffs have produced three separate billings statements combining the fees, costs and disbursement as follows:

1) Invoice Number 1026 represents the aggregate professional billable hours of 597.95 charged to the Plaintiffs under the corporate entity Center for Education Law, Ltd. at the hourly rate of Two Hundred Dollars ($200.00) per hour totaling $119,590.00. The lodestar amount of $250.00 per hour would result in fees in the amount $149,487.50. Costs and disbursements for that billing were in the amount $1,916.26. *Exhibit No. 1.*
2) Invoice Number 173 represents the aggregate professional billable hours of 201.75 charged to the Plaintiffs under the corporate entity Center for Education Law, Ltd. at the hourly rate of Two Hundred and Fifty Dollars ($250.00) per hour totaling $50,437.50 (*exhibit no.* 2) with costs and disbursements in the amount $ 1,212.43 (See *Kane Affidavit, ¶9*).;
3) Invoice Number 40 represents the aggregate professional billable hours of 389.27 charged to the Plaintiffs under the entity Kane Education Law, LLC at the hourly rate of Two Hundred and Fifty Dollars ($250.00) per hour totaling $97,317.50 with costs and disbursements in the amount of $2,412.79. *Exhibit No. 3.*

### A. PLAINTIFFS' HOURLY RATE IS REASONABLE AND ARE ENTITLED TO A LODESTAR AMOUNT REPRESENTING THE HOURLY CURRENT RATE.

In 2000, the United States District Court in *Westendorp v. ISD No. 273*, 131 F.Supp.2d 1121 (D.Minn. 2000) found that the prevailing parties' hourly rate of Two Hundred and Fifty Dollars ($250.00) per hour pre-1998 and, post 1998, Three Hundred Dollars ($300.00) per hour for constitutional and IDEA related claims were reasonable hourly rates. The Defendants could argue that the court awarded the plaintiffs the hourly amounts because the case was "a procedurally complex civil rights case raising a host of difficult and interrelated constitutional and statutory issues . . ." *Id*. at 1126.

The court in *Westendorp* properly found that the $250.00 - $300.00 per hour charged by the plaintiffs' attorney was "commensurate with the rates charged by 'highly-skilled attorneys in [the] Minneapolis-St. Paul market dealing with complex and specialized matters drawing on an attorney's areas of special expertise."

The case law in the United States District Court or the Eighth Circuit Court of Appeals does not provide the Court with a litmus test for determining the "community" in which the proceedings for which the Plaintiffs were awarded legal fees "arose."

A reasonable hourly rate is calculated according to the prevailing market rates in the community. *Washington v. Phila. County Court of Common Pleas,* 89 F.3d 1031, 1035 (3rd Cir.1996). An attorney's usual billing rate is a good starting point for assessing reasonableness, though it is not dispositive. *Maldonado v. Houstoun,* 256 F.3d 181, 184-85 (3rd Cir.2001).

The Plaintiffs submit in support of their petition for attorneys' fees the attached Affidavits of Steven Rau, which details his experience as a practitioner in this specialized area of

law, of the reasonableness of the hourly rate charged by the Plaintiffs' attorney at the time the proceeding was initiated.

An hourly rate of $220.00 per hour was affirmed as the correct hourly amount for special education administrative hearing in a Report and Recommendation by Magistrate Judge Raymond L. Erickson entered on the 18th of July 2006 in *M.M. v. Special School Dist. No. 1*, (Civil File No. 05-2270).[4] The Report and Recommendation was affirmed by Judge Richard H. Kyle over the defendant's objections on the 5th of September 2006. Presently, the decision is on appeal to the Eighth Circuit Court of Appeals (Appellate File No. 06-3572). While counsel vehemently denies that representation in an administrative hearing is any less complex or specialized, the rate associated with special education administrative hearings is not comparable to the rate in the community of trial attorney and the skills required to succeed in a jury trial wherein novel legal issues are present arguably exceed the skills necessary to successfully pursue a special education administrative hearing.

Defendants will argue that the hourly amount billed by the defendants' counsel is the accurate hourly rate. However, there exists a substantial difference between the defense and plaintiffs community. First, the legal community in which Plaintiffs' counsel contends is an extremely limited pool of lawyers (perhaps 2 or 3 other plaintiffs' lawyers) due to the limited resources of plaintiffs. Second, defense counsel assumes no risk in representing clients. Third, plaintiffs counsel must evolve the law on behalf of the plaintiffs due to the lack of successful litigation on behalf of plaintiffs. Fourth, defense counsel has substantial resources at its disposal

---

[4] The analysis of fees and costs in the Report and Recommendation begin on page 60 and proceed through to

and is not in the business of defending the interests of individuals who are in some means or manner disenfranchised from the governmental agency being sued.

### B. THE HOURS DEVOTED TO REPRESENTATION ARE REASONABLE.

The Plaintiffs anticipate that the Defendants will argue that the hours devoted to representation are unreasonable. However, the Plaintiffs removed from the billable statement those hours devoted to the voluntarily released defendant, Arlene Pexa.

The Plaintiffs devoted 1,188.77 hours of professional services representing the Plaintiffs in this litigation Wherein, Defendants devoted approximately 1,355 hours of professional services representing the Defendants in this litigation.[5] The hours each party devoted to representation appears to be fairly comparable. No reasonable argument can be made that the hours expended by Plaintiffs can be made particularly in light of the Defendants' perpetuation of litigation and appeals.

## CONCLUSION

Plaintiffs respectfully request that the court grant their request for attorneys' fees and related costs pursuant to their petition for attorneys' fees in the amount of $306,646.98 inclusive of costs, disbursements and expert fees, which represents the lodestar amount of invoice no. 1026 in the amount of $250.00/hr.,[6] along with post-judgment interest permitted by law, be granted. Plaintiffs also request that they be awarded the attorneys' fees associated with responding to the Motion for Judgment NOV and the Application for Fees in the amount of $3,937.50 representing 15.75 hours at $250.00.

---

[5] The approximation is based upon the total professional billable hours divided by an average billable hourly rate of $160.00 representing the varying hourly rates between the three attorneys of record.

[6] The non-lodestar amount is $276,749.48 inclusive of costs, disbursements and expert fees.

Respectfully submitted,

**KANE EDUCATION LAW, LLC.**

Dated: 13 November 2006

By: /s/ Margaret O'Sullivan Kane
Margaret O'Sullivan Kane/ID #220243
Attorney for Plaintiffs
1654 Grand Avenue
Suite 200
Saint Paul, Minnesota 55104
651/222-8611