**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

M.P., by and through his parents and natural guardians, K.P. and D.P.,

Plaintiffs,

Case No. 01-771 (JNE/JJG)

-vs-

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR AN AWARD AND APPROVAL OF FEES AND EXPENSES**

Independent School District No. 721, New Prague, New Prague Board of Education,

Defendant.

---

**FACTUAL BACKGROUND/PROCEDURAL POSTURE**

This matter began with a special education due process hearing request made by K.P. and D.P., the parents of M.P., ("Plaintiffs") on November 28, 2000. M.P. was a resident student of Independent School District No. 721, New Prague, Minnesota ("School District" or "District") and, over several years, received special services and accommodations based upon a disability. After removing M.P. from all School District programs and enrolling him in another school district, the Plaintiffs initiated a special education due process hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.

The School District made a motion to dismiss for lack of jurisdiction based upon the firmly established Eighth Circuit precedent of *Thompson v. Bd. of the Special Sch. Dist. No. 1* that all IDEA claims are moot if a child leaves a school district prior to seeking an administrative hearing. *Thompson v. Bd. of the Special School Dist. No. 1*, 144 F.3d 574, 578-79 (8th Cir. 1998). An administrative law judge granted the motion. The Plaintiffs appealed to a hearing review officer who affirmed the dismissal.

On April 11, 2001, the Plaintiffs filed suit in Le Sueur County District Court against the School District and a high school health paraprofessional. In their Complaint, the Plaintiffs appealed the hearing review officer's decision dismissing their IDEA claims and added claims alleging violations of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; 42 U.S.C. § 1983 ("Section 1983"); the Fourteenth Amendment to the United States Constitution; the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01, et seq.; the Minnesota Government Data Practices Act ("MGDPA"), Minn. Stat. § 13.01, et seq.; and, the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA"). *See generally*, Complaint.

The Plaintiffs' requested relief included: reinstatement of M.P. to the District or in the alternative, District payment of the on-going cost associated with transporting M.P. to a different school district, other out-of-pocket and related expenses, and all educational benefits for M.P.; identification, evaluation and provision of special education and related services to M.P.; compensatory

education services or comparable monetary damages for the denials of a free appropriate public education and lost special education and related services; a permanent injunction enjoining the District and its employees from engaging in illegal and unlawful customs, policies and practices; and, compensatory and punitive damages in excess of $300,000.00. *Id.*

The District removed the action to federal court in May 2001. Thereafter, a settlement conference was held. The Plaintiffs' demand ranged from $900,000.00 to $500,000.00. The matter did not settle. *Affidavit of Marie C. Skinner* (attached).

On December 27, 2001, the School District filed a Motion for Summary Judgment on all Plaintiffs' claims. The motion was granted on May 14, 2002. *M.P. v. Indep. Sch. Dist. No. 721*, 200 F.Supp.2d 1036 (D.Minn. 2002). The district court held that the IDEA claims were moot because the Plaintiffs failed to exhaust administrative remedies. The court dismissed the Section 504 claim finding that the District took appropriate steps to remedy the alleged harassment. The Fourteenth Amendment and Section 1983 claims were dismissed upon the court's finding that the Plaintiffs failed to establish the existence of a continuing, widespread pattern of unconstitutional misconduct. Likewise, the Plaintiffs failed to establish a prima facie case under the MHRA. The court dismissed the data practices claims because the material facts did not suggest the actual disclosure of protected information or a casual connection between the alleged violation and

any injury. Finally, the court determined that no private right of action exists under FERPA.

The Plaintiffs made a partial appeal to the Eighth Circuit Court of Appeals on June 14, 2002. They did not appeal the summary judgment against them on their Fourteenth Amendment, MHRA, MGDPA and FERPA claims. On April 16, 2003, the Eighth Circuit affirmed judgment in the School District's favor on the IDEA and Section 1983 claims. *M.P. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975 (8th Cir. 2003). Only the Section 504 claim remained which the court held raised enough disputed factual issues to withstand summary judgment. *Id.*

On May 7, 2003, in an effort to save their IDEA claims, the Plaintiffs filed a Petition for Re-Hearing En Banc. The Eighth Circuit denied the petition on July 3, 2003. The case was remanded to this court for resolution of the Section 504 claim.

On March 1, 2004 the School District filed a Motion for Dismissal and/or Summary Judgment based, in part, on lack of jurisdiction. On January 3, 2005, this court dismissed all remaining Section 504 claims, holding that the claims were FAPE based and, therefore, required exhaustion of IDEA administrative remedies. *M.P. v. Indep. Sch. Dist. No. 721*, Civ. No. 01-771 (JNE/JGL), slip op. at 2 (D. Minn. Jan. 3, 2005).

On April 21, 2005, Plaintiffs appealed to the Eighth Circuit Court of Appeals. On March 8, 2006, the Eighth Circuit reversed and remanded the case for trial. The court ruled that the Section 504 claims were not FAPE related

because they did not involve individual identification, evaluation, education placement, or free appropriate education decisions. Therefore, exhaustion of IDEA remedies was not necessary in order for the court to hear the Section 504 claim. *M.P. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 868 (8th Cir. 2006).

The parties met on August 4, 2006 to again attempt a settlement. The Plaintiffs' initial demand was just under $1,000,000.00 which they lowered to approximately $600,000.00. *Skinner Aff.* The case was not resolved. *Id*.

On August 3, 2006, the Plaintiffs made a written demand for $189,847.03 in attorney's fees and expenses, $500,000.00 in compensatory damages for M.P., $250,000.00 in compensatory damages for the family, and additional demands. *Id.* The District rejected the demand and made a counter offer of $101,000.00. The Plaintiffs rejected that offer and made a counter-demand of $239,465.03 in attorney's fees and expenses, $250,000.00 in compensatory damages and additional demands. On August 15, 2006, the District sent a written offer of $101,000.00 to Plaintiffs. A Rule 68 Offer in the same amount was made on August 18, 2006. The Plaintiffs rejected the offers. *Id*.

On September 6, 2006, the parties met with the Magistrate Judge in a final attempt to settle this matter. The parties remained hundreds of thousands of dollars apart. Because the parties were unable to come to any agreement, the matter proceeded to trial. *Id.*

A five day trial began on September 11, 2006. The jury returned its verdict on September 15, 2006. On September 21, 2006, the court entered a judgment

awarding $47,375.00 in compensatory damages to M.P. and $37,300.00 in compensatory damages to K.P. On September 25, 2006, the District renewed its motion for judgment as a matter of law. That motion is currently under advisement. The Plaintiffs submitted this petition for fees and costs on November 13, 2006.

## STANDARD OF REVIEW

This court is authorized to award attorney's fees in actions brought pursuant to the Rehabilitation Act through 29 U.S.C. § 794a. The statute states, in pertinent part:

> In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

29 U.S.C. §794a(b). There is no statutory definition of the term "prevailing party." However, the United States Supreme Court has noted "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S.Ct. 566 (1992)(interpreting 42 U.S.C. § 1988).[1]

---

[1] "Decisions construing [terms appearing] in . . . § 1988, 'are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party.'" *Warner v. Ind. Sch. Dist. No. 625,* 134 F.3d 1333, 1337 (8th Cir. 1998) (quoting *Hensley v. Eckerhart* , 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n.7 (1983)).

Prevailing party status and attorney's fees, however, are not "all or nothing" propositions. Plaintiffs are not entitled to recover all of their fees by simply prevailing on one or two issues. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee . . . [and] where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 1943 (1983). In the situation where a plaintiff "prevailed" by succeeding on but a few of the claims, the court must ask: (1) "did the plaintiff fail to prevail on claims unrelated to the claims on which he succeeded?" and (2) "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* at 434, 103 S.Ct. at 1940.

The Rehabilitation Act's fee shifting provision also allows the court to reduce or deny attorney's fees in other circumstances. Fees must be proportionate to the actual result obtained. *Gumbhir v. Curators of the University of Missouri*, 157 F.3d 1141, 1146-47 (8th Cir. 1998). Fees also must be reasonable in light of the prevailing market rate where the case is litigated. *Emery v. Hunt*, 272 F.3d 1042, 1047-48 (8th Cir. 2001).

## ARGUMENT

The Defendant's Motion for Judgment Notwithstanding the Verdict is under advisement. Therefore, whether the Plaintiffs are prevailing parties is not

conclusively established. If the Defendant's motion is granted, the Plaintiffs will not have prevailed on any issue and will not be entitled to recover any of their fees.

In the event the Defendant's motion is denied, the Plaintiffs will have prevailed to some extent. They should not, however, recover all of their fees. First, the majority of their claims, for which they sought significant damages and other remedies, were dismissed. Second, the relief they did obtain is much less than they had requested. Third, the hourly rate being claimed exceeds the local standard. Finally, expert witness fees are not recoverable. The court should reduce the Plaintiffs' fees accordingly.

## I. THE PLAINTIFFS ARE NOT ENTITLED TO FULL RECOVERY OF THEIR ATTORNEY'S FEES. THEY FAILED TO PREVAIL ON THE MAJORITY OF THEIR CLAIMS.

If the Plaintiffs are prevailing parties, their status is limited. The majority of their claims failed and they obtained but a small percentage of the relief they originally sought. Any fees awarded should properly reflect their limited success.

### A. The Plaintiffs Failed To Prevail On The Majority Of Their Claims.

In determining the amount of fees to award a prevailing party, the most important factor the court must consider is the result actually obtained. *United Handicapped Federation v. Andre*, 622 F.2d 342, 348 (8th Cir. 1980)(citations omitted); *see also, Hensley*, at 432, 103 S.Ct. at 1949 (noting agreement with *Andre*'s directive that courts consider the degree of success in setting a fee award).

Fees incurred pursuing failed claims and unrealized relief are not recoverable even if a plaintiff has prevailed on other claims. *Andre*, at 348.

In *Andre*, the plaintiffs sued several state and federal transportation agencies seeking improved access to mass transit for individuals with disabilities. *Id*. at 344. The district court granted the defendants' summary judgment motion on most of the claims. Rather than appeal, the parties entered into a settlement whereby the plaintiffs agreed to dismiss the action in exchange for a stipulation that transportation service would be fully accessible by a specific date. *Id*. at 345. The plaintiffs then filed a motion for attorney's fees in the amount of $216,832.25. The district court denied the motion and the plaintiffs appealed. *Id*.

On review, the Court of Appeals for the Eighth Circuit also refused to award full fees. Finding the plaintiffs had prevailed to a "limited extent," the court observed that their suit had involved multiple state and federal claims that failed and that "[m]uch of the relief which they sought was not granted nor was it likely to be granted if they had continued to litigate." *Id*. Based upon their limited success, the court awarded the plaintiffs $12,500 in fees and costs.

### 1. The Plaintiffs' Constitutional, MHRA, MGDPA And FERPA Claims Failed.

Any award of attorney's fees in this matter should be similarly reduced. This case began as an IDEA special education due process hearing request in November 2000. An administrative law judge dismissed the hearing for lack of

jurisdiction on January 12, 2001. The Plaintiffs appealed to a hearing review officer who upheld the dismissal.

The Plaintiffs then filed suit against the School District. In their Complaint, the Plaintiffs again appealed the dismissal of their IDEA special education due process hearing. They also added data practices claims under the Minnesota Government Data Practices Act, and the Family Educational Rights and Privacy Act, alleging that private information about M.P. was unlawfully disclosed. They alleged the District violated Minnesota Human Rights Act, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, the Fourteenth Amendment to the United States Constitution, and 42 Section 1983 of the Civil Rights Act. *See,* Complaint.

The Plaintiffs requested relief included: reinstatement of M.P. to the District or, in the alternative, payment of the on-going cost associated with transporting M.P. to another school district, reimbursement of out-of-pocket and related expenses, and educational benefits for M.P.; identification, evaluation and provision of special education and related services to M.P.; compensatory education services or comparable monetary damages for the denials of a free appropriate publication education and lost special education and related services; a permanent injunction enjoining the District from engaging in illegal and unlawful customs, policies and practices; and, compensatory and punitive damages in excess of $300,000.00. *Id.*

On May 14, 2002, the United States Court for the District of Minnesota granted the School District's Motion for Summary Judgment. *M.P. v. Indep. Sch. Dist. No. 721*, 200 F.Supp. 2d 1036 (D.Minn. 2002). The district court held that it lacked jurisdiction over the Plaintiffs' IDEA claims due to their failure to exhaust administrative remedies. The court dismissed the Section 504 and Minnesota Human Rights Act claims, finding that the Plaintiffs had failed to state a prima facie case. The Fourteenth Amendment and Section 1983 claims were dismissed upon the court's finding that the Plaintiffs failed to establish the existence of a continuing, widespread pattern of unconstitutional misconduct. Finally, the court dismissed the data claims. The court found the material facts did not suggest the actual disclosure of protected information or a casual connection between the alleged violation and any injury in order to support the MGDPA claim and that FERPA does not create a private right of action. *Id.*

The Plaintiffs appealed the rulings on their IDEA, Section 504, and Section 1983 claims to the Eighth Circuit Court of Appeals on June 14, 2002. They did not appeal the judgments in the District's favor on their Fourteenth Amendment, MHRA, MGDPA and FERPA claims.

Therefore, those judgments in the District's favor became final. The Plaintiffs failed to obtain any of the injunctive or monetary relief they sought stemming from those four causes of action. Because they did not prevail on their Fourteenth Amendment, MHRA, MGDPA and FERPA claims, all fees spent on those claims must be denied.

### 2. Plaintiffs' IDEA Claim Failed.

On April 16, 2003, the Eighth Circuit affirmed summary judgment in the District's favor on the Plaintiffs' IDEA and Section 1983 claims. *M.P. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975 (8th Cir. 2003). However, it reversed and remanded the Section 504 discrimination claims. On May 7, 2003 Plaintiffs filed a Petition for Re-Hearing En Banc on their IDEA claims. The Eighth Circuit denied the petition, resulting in a final decision in the School District's favor on all IDEA claims.

The IDEA comprised a substantial portion of this case. Because all of those claims failed, the Plaintiffs cannot recover their associated fees and costs. Specifically, they are not entitled to any fees for the special education due process hearing or the hearing review officer appeal. Fees incurred in the first district court and first Eighth Circuit decisions must be reduced as the vast majority of the argument at those stages pertained to the IDEA. They are not entitled to any fees at all for their rehearing petition that was denied after the first Eighth Circuit decision.

The Plaintiffs suggest their IDEA-related fees should be recoverable because they needed to exhaust IDEA administrative remedies before proceeding to federal court. Not only is their assertion based on a false statement of fact, but it also misrepresents the case's procedural posture and the Eighth Circuit's decision. The Eighth Circuit specifically held that the Plaintiffs had failed to exhaust administrative remedies. *M.P.*, 326 F.3d at 980-81. The Plaintiffs did not

request their special education hearing in a timely manner. This prevented them from obtaining a hearing which is essential for proper exhaustion. *Id*. The Eighth Circuit noted it had already established controlling precedent on the issue. *Id*. (citing *Thompson v. Bd. of the Special Sch. Dist. No. 1,* 144 F.3d 574 (8th Cir. 1998)).

The Plaintiffs were not required to pursue an IDEA hearing in order to have their Section 504 claims heard in federal court. In its second opinion, the Eighth Circuit concluded that exhaustion of IDEA remedies was not necessary because the remaining Section 504 claims were "wholly unrelated to the IEP process which involves individual identification, evaluation, educational placement and free, appropriate (FAPE) decisions." *M.P. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 868 (8th Cir. 2006). It noted that its decision was consistent with precedent indicating that certain Section 504 claims may still be considered even if the plaintiff's IDEA claim fails for lack of jurisdiction. *Id.* (citing *Thompson*, at 576).

Thus, Plaintiffs never should have requested the IDEA hearing in the first place. Their attorney knew the Plaintiffs had not exhausted remedies rendering their IDEA claims moot. Their attorney also should have known exhaustion was not a prerequisite to the Section 504 claim because she subsequently argued to this court and the Eighth Circuit that the discrimination claim was not FAPE-related. Because the IDEA claim was unnecessary and destined to fail, all fees incurred in its pursuit should be denied.

Moreover, the Eighth Circuit decision did not change the existing law. It was well established that a non-FAPE related Section 504 discrimination claim could proceed without IDEA administrative remedies being exhausted. The question for the Eighth Circuit was whether in this particular case the Plaintiffs' claim was FAPE-related or not. Any precedential value is limited by the specific facts.

**B. The Fees Are Excessive In Light Of The Plaintiffs' Limited Success.**

Only one of the Plaintiffs' seven causes of action survived summary judgment and went to trial. While the Plaintiffs obtained a jury verdict in their favor, the relief they obtained was significantly less than they originally sought. In determining what is "reasonable" the court must consider what benefit the plaintiff ultimately obtained. Any award of attorney's fees must be proportionate to that benefit. Attorneys should not reap huge financial benefits when their clients experience relatively limited success.

For example, the Eighth Circuit significantly limited the fees awarded to a plaintiff who requested more than $500,000 in attorney's fees and costs. *Gumbhir v. Curators of the University of Missouri*, 157 F.3d 1141, 1146-47 (8th Cir. 1998). The district court had dismissed six of the plaintiff's nine claims on summary judgment. A jury then awarded the plaintiff compensatory damages of $4,432.20—approximately one fourth of what was requested—on a Title VII retaliation claim. The district court added an additional $4,432.20 as a prospective pay increase. The plaintiff's claim for damages for emotional distress was denied

as was the "wide-ranging equitable relief" he requested. *Id*. at 1146, 1147. Nonetheless, the plaintiff sought $535,000 in attorney's fees and costs. The district court awarded $110,000. *Id*.

On appeal, the Eighth Circuit directed courts reviewing fees petitions to consider whether the requested fee award "exceeds the amount that could ever be reasonable" for the case. *Id.* The inquiry was deemed necessary "because attorneys 'should not be permitted to run up bills that are greatly disproportionate to the ultimate benefits that may be reasonably attainable.'" *Id*. (quoting *Copeland v. Marshall*, 641 F.2d 880, 908 (D.C. Cir. 1980)(en banc)(MacKinnon, J., concurring)).

The court noted that in his closing argument to the jury the plaintiff's counsel requested lost salary damages of $20,832.00 but declined to state a specific amount for emotional distress damages. *Id*. This demonstrated the attorney knew the case "involved only a relatively modest claim for compensatory damages, perhaps $50,000 to $75,000 at most. It was simply not reasonable for an attorney to run up a bill of $450,000 to $500,000 to litigate this type of damage claim." The court then reduced the fee award to approximately $46,000.00. *Id.* [2]

At the outset of this case, the Plaintiffs sought $300,000 in damages. *See*, Complaint. After having six of their seven claims decided against them, the

---

[2] The Eighth Circuit acknowledged that calculating a fees award on a pro rata basis would not normally be appropriate. *Id*. at 1147. Nonetheless, consideration of what a plaintiff ultimately obtained and what was spent to obtain it remains relevant to the analysis even if a strict mathematical formula is not used.

Plaintiffs offered to settle the matter for $1,000,000 (damages and fees) which they later reduced to $600,000. *Skinner Aff*. Shortly before trial, the Plaintiffs offered to settle for $250,000 in damages and approximately $240,000 in fees. *Id.* Yet, in closing arguments, the Plaintiffs' counsel, like that in *Gumbhir*, curiously declined to request a specific damage amount from the jury, or even to suggest a range.

As in *Gumbhir*, that reluctance to affirmatively place a value on their claim before the jury indicates that Plaintiff's knew it was worth less than what they postured. Otherwise, they would have put the demand directly in the jury's hands. They did not do that, presumably, for the same reasons as in *Gumbhil*. By the time it went to trial, the case had only a relatively modest damage claim. The Plaintiffs ended up with less than one third of what they originally sought. A fee award of more than 3.5 times what the Plaintiffs obtained is disproportionate and unreasonable.

## II. THE HOURLY RATE BEING CLAIMED IS EXCESSIVE.

This court may reduce the award of attorney's fees if it finds that the claimed hourly rate is unreasonable. A reasonable hourly rate is usually the prevailing market rate or the ordinary rate for similar work in the community where the case has been litigated. *Emery*, 272 F.3d at 1047-48**.** Although a counsel's customary rate might be some evidence of a reasonable rate, it is not controlling. *See*, *Jacquette v. Black Hawk County,* 710 F.2d 455, 458 (8th Cir. 1983). An attorney's customary rate does not control when equally effective but

less costly representation is available. *See, Alexander v. City of Minneapolis*, 545 F.Supp. 586 (D.Minn. 1982)(hourly rate for out of town attorney lowered to that of local counsel whose representation was of comparable quality).

The $250 hourly rate claimed by the Plaintiffs is clearly excessive. Twice within the past seven months courts within this District have found counsel's rate to "unreasonably exceed the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience." *M.M. v. Special Sch. Dist. No. 1*, 2006 WL 2571229 (D.Minn. 2006)(quoting *J.T. v. Indep. Sch. Dist. No. 701,* Civ. No. 05-1640, at p. 7 (D. Minn., April 17, 2006)). Both found a rate of $220 per hour to be reasonable. *Id*.

The Plaintiffs' contention that only "2 or 3 other plaintiffs lawyers" practice in this area is untrue. *See*, Plaintiffs' Brief in Support of Application for Fees at 16. Parents have many options for obtaining legal services. As this court recently noted, parents of disabled students may obtain free and low cost services through organizations such as PACER and the Volunteer Lawyers Network. *A.C. v. Indep. Sch. Dist. No. 152,* 2006 WL 3227768, at *5 (D.Minn. 2006). Equally effective but less costly representation is certainly available. It, simply, is not necessary for plaintiffs to pay $250 per hour for legal representation.

Equally unpersuasive is Plaintiffs' attempt to analogize their legal services to those provided in *Westendorp v. Indep. Sch. Dist. No. 723,* 131 F.Supp.2d 1211 (D.Minn. 2000). As the district court found, that case "involved novel and complex issues requiring the expenditure of considerable time and labor and a

specialized knowledge of First Amendment law, statutory interpretation, and complex civil litigation . . . that [counsel] ha[d] an almost unsurpassed level of experience, reputation, and ability in the area of religious freedom litigation [and] that, because of its difficulty, this case was unattractive even to seasoned litigators in this area" and the plaintiffs obtained "excellent results" on all of their claims. *Id*. at 1126-27. That combination of factors does not exist here.

## III. EXPERT WITNESS FEES ARE NOT RECOVERABLE.

The Plaintiffs seek reimbursement in the amount of $3,863.00 for expert witness fees. The request should be denied. Expert witness fees and expenses, beyond the standard $40 per day appearance fee contained elsewhere in the federal statutes, are not recoverable in a Section 504 action. *Mason v. Maine Dept. of Corrections*, 387 F.Supp.2d 57, 64 (D.Me. 2005).

Plaintiffs' assertion that such costs are recoverable is based upon a flawed interpretation of the Rehabilitation Act's attorney's fees provision. That part of the statute allows only for the recovery of a "reasonable attorney's fee. . . ." 29 U.S.C. § 794a(b). It is silent with respect to expert fees. Certainly, Congress could have chosen to include such fees with an attorney's fees award as it did with other statutes. *See,* 42 U.S.C. § 1988(c) (specifically allowing recovery of "expert fees as part of the attorney's fee" in actions under 42 U.S.C. §§ 1981 and 1981a). The absence of such a provision for Section 504 indicates that expert fees are not to be awarded.

The Rehabilitation Act's incorporation of the "remedies, procedures, and rights" stated in Title VII of the Civil Rights Act of 1964 applies only to employment claims brought pursuant to Section 501 of the Rehabilitation Act. 29 U.S.C. § 794(a)(1). Claims brought under Section 504, as in this case, have available the different remedies set forth under Title VI of the Civil Rights Act. 29 U.S.C. § 794(a)(2).

Unlike Title VII, Title VI "mentions no remedies – indeed it fails to mention even a private right of action. . . ." *Barnes v. Gorman*, 536 U.S. 181, 187, 122 S.Ct. 2097, 2102 (2002). Title VI plaintiffs must seek their attorneys fees through 42 U.S.C. § 1988 which does not authorize awards of expert fees for Title VI claims. 42 U.S.C. § 1988(b), (c); *see also, Padro v. Comm. of Puerto Rico*, 100 F.Supp.2d 99 (D.P.R. 2000), *aff'd as modified*, 247 F.3d 288 (1st Cir. 2001) (expert fees are recoverable under § 1988 only for claims brought pursuant to §§ 1981 and 1981a). *Mason*, 387 F.Supp.2d at 64 (same).

The cases the Plaintiff cites are inapplicable. Neither concerns the recovery of expert witness fees under 29 U.S.C. § 794a(b). Instead, they highlight the differences in actions brought under Section 501 from those under Section 504 and explain why, as in the situation here, it is necessary to distinguish between the two. The Plaintiffs' request for expert fees must be denied.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' application for full fees and costs should be denied. Any award of fees should reflect the Plaintiffs' failure to

prevail on six of their seven causes of action and their limited success on the one claim that survived. Claiming fees and costs that are triple than what the Plaintiffs received is simply unreasonable. The hourly rate should be reduced to a level consistent with the legal community. The claim for expert fees should be denied entirely.

Respectfully submitted,

Dated: December 1, 2006

KENNEDY & GRAVEN

By /s/ Marie C. Skinner

Marie C. Skinner (#165025)
Charles E. Long (#239604)
470 U.S. Bank Plaza
200 South Sixth Street
Minneapolis, MN 55402
Attorneys for Indep. Sch. Dist. No. 721